STATE OF TENNESSEE *v.* ROXIE ARGO.

(*Nashville.* December Term, 1906.)

1. **CRIMINAL LAW. PERJURY.** Indictment for, must state substance of controversy about which it was committed.

An indictment for perjury, in addition to the other requisites, must set forth the substance of the controversy in respect of which it is alleged that the offense was committed, in order that the court may determine whether the matter alleged to have been sworn to was material.

Code cited and construed: Secs. 7092-7093 (S.); secs. 5958-5959 (M. & V.); 5129-5130 (T. & S. and 1858).

Cases cited and approved: State v. Bowlus, 3 Heisk., 29; Ross v. State, 1 Tenn. Cas. (Shannon), 406; State v. Owens, 2 Tenn. Cas. (Shannon), 534; State v. Wise, 3 Lea, 38; Lawson v. State, 3 Lea, 309; Woods v. State, 14 Lea, 460.

2. **SAME.** Indictment for perjury failing to state substance of controversy, bad upon motion to quash. Case in judgment.

Where an indictment for perjury alleged that it became material in the investigation of certain contempt proceedings against defendant to know whether he telephoned to a saloon advising the persons in charge of a contemplated visit of certain officers and directing them not to permit the officers to examine behind the bar, but the indictment did not state the substance of the controversy in such contempt proceedings to enable the court to determine that the matter so stated was material, upon motion to quash it was held that the indictment was fatally defective.

---

FROM DAVIDSON.

---

Appeal from the Criminal Court of Davidson County. —W. M. HART, Judge.

ATTORNEY-GENERAL CATES, for the State.

J. M. ANDERSON, ROBERT VAUGHAN, and W. C. CHERRY, for Argo.

MR. JUSTICE NEIL delivered the opinion of the Court.

In the court below the indictment was quashed, and the State has appealed. The indictment, omitting the merely formal parts is as follows:

"That Roxie Argo . . . on the third day of February, 1905, . . . in the county aforesaid, unlawfully, feloniously, willfully, deliberately, maliciously, . . . and corruptly swore falsely to a certain material matter as follows:

"Before R. R. Caldwell, a duly and lawfully elected and qualified justice of the peace for said county of Davidson, sitting as the judge of and holding the city court of the mayor and city council of Nashville, in the absence of the regularly elected city judge, then and there court being held and investigating and hearing a certain contempt proceedings against the said Roxie Argo, charging the said Argo with interfering with and obstructing said court in the administration of justice, and the said contempt proceedings was within the jurisdiction of the said court, wherein and on the hearing of said proceeding, it became and was material to inquire whether or not the said Roxie Argo, while the said court was hearing certain cases on the day and year aforesaid,

went to the telephone for the purpose of calling, and did call, up Session's saloon, in said city, for the purpose of telling, and did tell, some one in said saloon not to allow the officers to examine behind the bar of said saloon. And the said Roxie Argo being then and there sworn on his oath to tell the truth, the whole truth, and nothing but the truth in said contempt proceedings by the said R. R. Caldwell, acting judge as aforesaid, and the said judge then and there having lawful authority to administer said oath, when, having been so sworn, the said Roxie Argo unlawfully, feloniously, willfully, deliberately, premeditatedly, maliciously, absolutely, and corruptly swore that he, the said Roxie Argo, did not go to said telephone, or any telephone, for the purpose of calling, nor did he call, up Session's saloon, on Union street, or any other saloon, for the purpose of telling, nor did he tell, any one in said saloon not to allow the officers to examine behind the bar of said saloon; that he did not go to any 'phone for the purpose of informing any saloon that officers were coming to examine behind the bar of said saloon; that he did not go to any 'phone for the purpose of informing any saloon that officers were coming to examine the bar of said saloon—which said swearing above set out was material to the issue in said contempt proceedings, and was unlawfully, feloniously, willfully, deliberately, premeditatedly, maliciously, and corruptly false, and the said Roxie Argo then and there well knew the same to be false when he so deposed to it. So the grand jurors

aforesaid do present and say on their oath aforesaid
that the said Roxie Argo, on the day and year aforesaid,
in the county aforesaid, in the manner and form provid-
ed, and by means of the false swearing aforesaid, was
guilty of unlawful, felonious, willful, deliberate, pre-
meditated, malicious, absolute, and corrupt perjury, to
the evil example of all like offenders, against the peace
and dignity of the State."

There were sundry grounds of objection made in the
motion to quash; but we need set out here only the
third, which is as follows:

"Because the indictment alleges that it became mater-
ial to know a certain fact, and fails to set out a summary
statement of the matter in issue in the case, so the
court can see the materiality of the matter sworn to."

We think the motion to quash was properly sustained
on the ground just quoted, the purport of which is that
the indictment does not sufficiently state the substance
of the controversy to enable the court to see that the
matter alleged to have been sworn to was material. *State
v. Owens,* 2 Tenn. Cas., 534. In that case it appears
that the indictment contained two counts—one charg-
ing the defendant with swearing falsely to an answer
in chancery; the other, in deposing as a witness in a
case before a justice of the peace. The matter averred
to be false in the first count was in swearing in the
chancery proceeding that respondent in that case, in a
fair trade, sold William James a certain horse, and he

State v. Argo.

paid respondent therefor; and the second, that the respondent had not paid him for the horse.

Speaking to this matter, the court said:

"The objection taken to both counts is that, while it is averred that a certain suit was pending in the chancery court, naming the parties to the same, the jurisdiction of the court, and, we believe, all the other matters necessary to complete the charge, yet it is not shown by a statement of facts what the issue was in either the chancery court or before the magistrate, but only averred that in said cause it became material to know whether or not William James had purchased from William Owens a certain horse, etc. There is no statement of what was the matter in controversy in either case. By section 5129 (Shannon's Code, sec. 7092), it is provided that it shall not be necessary to set forth in the pleadings in such cases records or proceedings with which the oath is connected. But the next section (5130; Shannon's Code, sec. 7093) provides: 'It shall be sufficient in such case to give the substance of the controversy or matter in respect to which the offense was committed,' etc. This requirement, it is clear, is not met by the averments of this indictment. There is no statement of the substance of the matter of controversy in either case. It is only averred there was a suit pending. What the substance, or substantially what was the matter in controversy, is not shown; only that it became material. That is not an averment of facts showing the materiality of the matter sworn to. This is a clear requirement

of the Code, and may easily be complied with.   We hold the judgment of the court below is correct, and affirm the same."

In other cases cited there was a sufficient statement of the matter in controversy, though in some of them a meager one, to enable the court to see the materiality of the evidence in question or complained of as falsely deposed to.

In *Ross* v. *State,* 1 Tenn. Cas., 466, the controversy in which the evidence complained of was given was between the State and Alfred Lewis as to the larceny of certain goods.   Ross swore that he bought the goods from Lewis, thereby fixing possession in him.   This all appears from the indictment.

In *Lawson* v. *State,* 3 Lea, 309, it appears that the first count of the indictment charged that the grand jury had under investigation sales of intoxicating liquors without license, and that Lawson swore that he bought a pint of whisky from Fanny Chambers and paid her fifty cents therefor, and that this evidence was false. Here the materiality of the evidence is clearly seen.   The second count charged that on a trial between the State and Fanny Chambers for illegal sale of liquors Lawson swore falsely that he had bought none from her, but that she had given the whisky to him.

In *Woods* v. *State,* 14 Lea, 460, it appeared from the indictment that the grand jury had under examination the matter of gaming, and that Woods swore falsely that he had not seen any gaming at the house of Cal

Dobbins. Here the materiality clearly appears, because it was in the power of the grand jury to inquire of any gaming whatever within its jurisdiction.

In *State* v. *Bowlus,* 3 Heisk., 29, the indictment failed, because it did not show that there was any suit pending at all in which the false oath was taken. Id., 31.

In *State* v. *Wise,* 3 Lea, 38, the question considered was whether the indictment was fatally defective in failing to show whether the case in which the false oath was taken was by indictment or presentment, and this was held to be immaterial.

In the case now before the court, the indictment describes the proceeding in which the false oath was taken only as one for contempt. But there is no description, even of a general kind, showing the nature of the charge of contempt—that is, the substance of that controversy; and it is impossible to ascertain from the language of the indictment whether the false oath was of a matter material to that controversy or not, for the plain reason that the controversy is not stated. It is not sufficient to say merely that the oath was taken in a contempt proceeding. The pleader should go further, and display the contents or substance of that controversy, to enable the court to see, on the face of the indictment, that the evidence was material to that controversy. This does not require any great technical accuracy. It is easily done, and it is necessary in order that the time of the court may not be consumed in the examination of frivolous matters.

Affirm the judgment.